### IN THE UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **NATIONWIDE LIFE INSURANCE COMPANY,** | : <br> : <br> : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : <br> : | |
| **v.** | : <br> : | |
| **A.L. HOLDINGS, INC.,** | : <br> : | |
| **Defendant.** | : | |

### COMPLAINT

Plaintiff, Nationwide Life Insurance Company, an Ohio corporation ("Lender"), for its complaint against defendant, A.L. Holdings, Inc. ("Borrower"), avers as follows:

### NATURE OF THE ACTION

1.      This is an action for a declaratory judgment pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 to resolve an actual case or controversy between the parties as to whether a payment received by Borrower (as a commercial landlord) under a settlement agreement with a terminating tenant is a Termination Fee for purposes of the applicable loan documents.

2.      Lender seeks a declaration regarding the parties' rights and obligations under the loan documents, specifically holding that the payment received by Borrower from its terminating tenant is a Termination Fee in excess of $25,000 that must be deposited into an interest-bearing escrow account controlled by Lender and used to retrofit or build out the space for a new tenant and to pay any associated brokerage commissions.

### THE PARTIES

3.      Lender is an Ohio corporation with its principal office at One Nationwide Plaza, Fifth Floor, Columbus, Ohio 43215.

4.      Borrower is a New York corporation with its principal office at The Fleisher Group, 357 7th Avenue, New York, New York 10010.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000 and the action is between citizens of different states.

6.      Venue exists in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because Borrower resides in this judicial district.

## FACTS

7.      On or about December 7, 2012, in connection with the consolidation of existing indebtedness (the "Loan"), Borrower executed in favor of Nationwide Bank, a federally chartered savings bank ("Original Lender"), a Modification, Consolidation and Extension Note in the principal amount of $4,500,000 (the "Note"), a copy of which is attached hereto as Exhibit A.

8.      As security for the Loan, Borrower executed in favor of Original Lender a Mortgage Modification, Consolidation, Extension and Security Agreement dated as of December 7, 2012 (the "Mortgage"), a copy of which is attached hereto as Exhibit B.

9.      Borrower also executed in Original Lender's favor an Assignment of Leases, Rents and Profits dated as of December 7, 2012 (the "ALR"), a copy of which is attached hereto as Exhibit C.

10.     On or about October 12, 2018, Original Lender assigned the Loan, the Mortgage, the ALR and the other loan documents evidencing and securing the Loan (the "Loan

Documents"), and endorsed the Note, to Lender, and Lender is the current holder of the Note and the Loan.

11.     Borrower is the owner of the New York real property at 833 Madison Avenue in New York City, as more fully described in Exhibit A to the Mortgage (the "Real Property"), together with the Improvements thereon and Appurtenances thereto as defined in the Mortgage, which is operated as a multi-family property with ground floor retail space (the "Property").

12.     Pursuant to the terms of the Mortgage, Borrower has granted and assigned to Lender all of Borrower's right, title and interest in and to, *inter alia*:

> Any and all leases, licenses, contracts, rents, license fees, royalties, issues, revenues, profits, proceeds, deposits, income and other benefits, including accounts receivable, termination fees, of, accruing to or derived from the Real Property, Improvements and Appurtenances, and any business or enterprise presently situated or hereafter operated thereon and therewith and all of Borrower's right, title and interest under any and all lease guarantees, letters of credit, and any other credit support furnished to Borrower in connection with any of the foregoing (the "**Rents**").

Mortgage at 3.

13.     Consistent with the Mortgage, the ALR provides in pertinent part that:

> Borrower does hereby sell, assign, transfer and set over unto Lender all of the leases, rents, issues, security deposits, profits and income of, from or pertaining to the Property, including all of Borrower's interest under any and all lease guaranties, letters of credit and any other credit support furnished to Borrower in connection with any of the foregoing (collectively, the "**Rents**"), including without limitation, *any and all fees required to be paid, payable or paid by any tenant of any portion of the Property in order to terminate its lease, license, or rental agreement* ("**Termination Fees**").

ALR at 1 (italics added).

14.     The ALR thus broadly defines "Termination Fees" to include without limitation "any and all fees required to be paid, payable or paid by any tenant of any portion of the Property in order to terminate its lease, license, or rental agreement."  ALR at 1.

15.     The ALR requires that:

Termination Fees in excess of $25,000 . . . shall be deposited into an interest-bearing checking account controlled by Lender (with interest payable to Borrower) and used to retrofit or build out the space for a new tenant(s) under terms and conditions satisfactory to Lender and to pay brokerage commissions in connection with obtaining a new tenant.

ALR at 2.

16.     On or about June 23, 2014, Borrower entered into a store lease (the "Lease") with a retail tenant, Valextra US Corp. ("Tenant"), for a 10-year term.

17.     Upon information and belief, the Lease was secured by a letter of credit issued by Wells Fargo Bank in the amount of $1,000,000.00 delivered by Tenant to Borrower at commencement as security under the Lease (the "Letter of Credit").

18.     Upon information and belief, Tenant subsequently failed and/or refused to make its monthly lease payments to Borrower, who commenced against Tenant in New York County Housing Court an action for non-payment of rent captioned *A.L. Holdings, Inc. v. Valextra US Corp.*, Index No. L&T 69347/17 (the "Borrower-Tenant Action").

19.     Borrower and Tenant resolved the Borrower-Tenant Action by a Stipulation of Settlement filed on August 17, 2017 (the "Borrower-Tenant Settlement"), a copy of which is attached hereto as Exhibit D.

20.     The material terms of the Borrower-Tenant Settlement included (i) the termination of the Lease, (ii) a cash payment by Tenant to Borrower in the amount of $450,000 (the "Tenant Cash Payment") in full satisfaction of Rent due under the Lease through the termination of the Lease, and (iii) in addition to the Tenant Cash Payment, the right of Borrower to, at any time following such settlement and the termination of the lease, draw down and retain the proceeds of the Letter of Credit (the "Letter of Credit Proceeds").

21.     Thus, the Borrower-Tenant Settlement provided in relevant part that:

4

2.     On consent, this non-payment proceeding is converted to a holdover proceeding and ***the Lease is terminated as of the date hereof***.  . . .

3.     ***In full satisfaction of Rent due under the Lease through the termination of the Lease*** and use and occupancy for the Premises from and after the date hereof through October 31, 2017, simultaneously with the execution hereof ***[Tenant] has wire transferred to [Borrower] the amount of $450,000***.  . . .

5.     ***[Borrower] shall have the right at any time to draw down and retain the proceeds of the [Letter of Credit]*** previously delivered to [Borrower] by [Tenant] as security under the Lease…

Borrower-Tenant Settlement ¶¶ 2-3, 5 (emphasis added).

22.     Upon information and belief, Borrower has since drawn down and retained the Letter of Credit Proceeds.

23.     It is clear and indisputable from the plain language of the Borrower-Tenant Settlement that Borrower's agreement to terminate the Lease was in consideration for, among other things, the Letter of Credit Proceeds and the Tenant Cash Payment.

24.     Accordingly, the Letter of Credit Proceeds and the Tenant Cash Payment are fees paid by Tenant in order to terminate its Lease for purposes of the ALR's definition of Termination Fees.  *See* ALR at 1 (defining "Termination Fees").

25.     As Termination Fees in excess of $25,000 under the ALR, the Letter of Credit Proceeds and the Tenant Cash Payment were required to be deposited into an interest-bearing escrow account controlled by Lender and used to retrofit or build out the space for a new tenant and to pay any associated brokerage commissions.  *See* ALR at 2.

26.     Notwithstanding the foregoing, and despite Lender's demands, Borrower has failed and/or refused to deposit any portion of the Letter of Credit Proceeds into an interest-bearing escrow account controlled by Lender.  Nor did Borrower deposit the Tenant Cash Payment into an interest-bearing escrow account controlled by Lender.

27.     Lender's counsel provided a Notice of Default to Borrower with respect to

the Letter of Credit Proceeds by letter dated July 17, 2018, a copy of which is attached hereto as

Exhibit E, which advised Borrower in relevant part that:

> The specific default identified by this letter is the failure by Borrower to deposit
> with Lender the proceeds of a letter of credit paid to Borrower in connection with
> the termination of that certain lease between Borrower and Valextra US Corp.
> (the "**Lease**") pursuant to that certain Stipulation of Settlement received by the
> New York County Housing Court (the "**Housing Court**") on August 18, 2017 in
> connection with that certain non-payment proceeding filed with the Housing
> Court indexed as Index No. L&T 69347/17 (the "**Default**"). Such letter of credit
> proceeds paid to Borrower in connection with the termination of the Lease
> constitute a Termination Fee (as defined in the ALR), and the terms of the ALR
> require Borrower to deposit with Lender any Termination Fees, which Borrower
> has failed to do.

Notice of Default at 3.

28.     The Notice of Default further advised Borrower that:

> Borrower shall have thirty (30) days (the "**Cure Period**") from the date of this
> notice to cure the Default by depositing the Termination Fee into an interest
> bearing account controlled by Lender in accordance with the ALR.

Notice of Default at 3.

29.     Borrower has disputed the occurrence or existence of the Default for the

stated reason that the Letter of Credit Proceeds is not a Termination Fee as defined in the ALR.

30.     As stated by Borrower's counsel:

> [R]eceipt by Borrower of proceeds of the Valextra letter of credit delivered by
> Valextra upon execution of its lease more than four years ago as security for the
> payment of rent and the performance of its obligations for the term of its lease,
> several years prior to the contemplation of lease termination, does not in any way
> constitute a 'termination fee,' and therefore Borrower's refusal to deliver the
> proceeds of the Valextra letter of credit does not constitute a default under the
> Loan Documents.

Letter from B. Mandel to J. Page dated September 5, 2018.

31.     The parties have attempted without success to negotiate an amicable

resolution of this dispute.

6

## CLAIM FOR DECLARATORY RELIEF

32.     Paragraphs 1 through 31 of this Complaint are incorporated herein by reference.

33.     Borrower executed the Loan Documents, including the ALR, in favor of Original Lender, which Loan Documents have been assigned by Original Lender to Lender.

34.     The ALR broadly defines "Termination Fees" to include without limitation "any and all fees required to be paid, payable or paid by any tenant of any portion of the Property in order to terminate its lease, license, or rental agreement."  ALR at 1.

35.     Pursuant to the terms of the Borrower-Tenant Settlement, the Letter of Credit Proceeds and the Tenant Cash Payment were paid to Borrower in order to terminate the Lease.

36.     Since the amount of the Letter of Credit Proceeds and the Tenant Cash Payment exceeded $25,000, the ALR required that the Letter of Credit Proceeds and the Tenant Cash Payment be deposited into an interest-bearing escrow account controlled by Lender and used to retrofit or build out the space for a new tenant and to pay any associated brokerage commissions.

37.     Borrower disputes that the Letter of Credit Proceeds constitute a Termination Fee as defined by the ALR and has refused, despite Lender's demands, to deposit the Letter of Credit Proceeds into an escrow-bearing account controlled by Lender.

38.     Borrower has also failed to deposit the Tenant Cash Payment into an escrow-bearing account controlled by Lender.

39.     An actual, genuine and justiciable controversy exists between the parties with respect to whether the Letter of Credit Proceeds and the Tenant Cash Payment constitute Termination Fees as defined by the ALR.

## PRAYER FOR RELIEF

WHEREFORE, Lender respectfully requests that this Court enter a final judgment: (i) declaring that the Letter of Credit Proceeds and the Tenant Cash Payment constitute Termination Fees as defined by the ALR; (ii) declaring that Borrower is required to deposit the Letter of Credit Proceeds and the Tenant Cash Payment into an escrow-bearing account controlled by Lender under the terms and conditions of the ALR; and (iii) awarding to Lender its attorneys' fees and costs, together with such other and further relief as the Court may deem just and equitable.

Date:  November 9, 2018

*/s Justin W. Lamson*
Justin W. Lamson
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY  10019
Tel:  212.223.0200
Fax:  212.223.1942
lamsonjw@ballardspahr.com

Raymond A. Quaglia
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
Tel:  215.665.8500
Fax:  215.864.8999
quaglia@ballardspahr.com

*Counsel for Plaintiff Nationwide Life Insurance Company*

8